CLAXTON et al. v. CLAXTON et al.

Eastern Section.    November, 1931.

Petition for Certiorari denied by Supreme Court, March, 1932.

A. Y. Burrows and Fred G. Asquith, both of Knoxville, for plaintiff in error.

E. H. Marsh and L. M. G. Baker, both of Knoxville, for defendants in error.

SNODGRASS, J.   There are eight assignments of error.

The first is to the effect that the court erred in submitting the case to the jury because it is insisted there was no evidence in the case to sustain the verdict of the jury.

The second assignment is to the effect that the evidence greatly preponderated against the verdict of the jury.  This being a jury case, the second assignment is not available here because our only review of the jury's verdict on the facts is to ascertain whether or not there is any evidence to support it, and, if so, their determination as to the preponderance of the evidence supported by a concurrence of the court is conclusive on that point.

The third assignment that "the Court erred in not directing the jury that the contributory negligence of the defendants in error, their utter indifference to a duty that the law casts upon them, was the proximate cause of the injury," would have been to invade the province of the jury, whose duty it was to find the facts upon such issue, and to have assumed their existence as claimed would not have been authorized except upon their indisputable appearance in the proof in such way as that there could have been no disagreement in relation thereto.   This assignment therefore becomes only a circumstance to be considered in the disposition of the first assignment.

The reason assigned for the fourth assignment does not support it, for, while it may appear that the grounds of liability may be the same as urged in each claim for damages, it does not necessarily follow

that the injuries were the same or that the recoveries in each case should be identical. However, any merit that might be involved in this insistence should be considered on the merits involved in the first assignment.

Assignments 5 and 6 relate to alleged error in the charge and refusal to charge. To put the court in error for any refusal to charge specifically, it must appear that he was reasonably and seasonably so requested to charge and refused to do so. The record fails to present any evidence of any such declination as insisted in the sixth assignment, which is, for this reason overruled. Assignment No. 5 will be further considered in the investigation of the first assignment, in which also can be disposed of assignments 7 and 8.

We have examined the record and find the facts to be that on Saturday, October 5, 1929, as the declaration alleges, the two defendants in each case, C. D. Claxton and Otis McWhirter, being owners of the car in which they were riding, and being both present and in control of the car (though at the time of the accident McWhirter was driving), in company with plaintiffs in each suit, who were riding in the back seat of the car, were, in the forenoon of the day, proceeding to Chattanooga for the purpose of attending a baseball game; that the plaintiffs were their guests and being carried to see the game by invitation of these owners, and were subjected to no charge or obligation by virtue of such invitation, but were riding in the car as guests of the two owners, and, while the object of the journey to see the game was joint, the enterprise was in no sense of such a joint nature as to impute the negligence of the one to the other. But, as the two defendants were partners in the ownership of the car and employing it for a joint purpose, the enterprise was joint so far as they were concerned, because any act, such as driving the car, done by each in the furtherance of the enterprise, was of the character of such agency for both as made it the act of both because each was entitled to direct the movements of the car. It was different as to their guests who, occupying this relationship, were not entitled to direct the movements of the car, but were only charged with the duty of ordinary prudence under the circumstances to look out for their own safety.

In this situation we think it is immaterial as to which one of the partners in the ownership was driving the car at the time of the accident, as the doctrine of respondeat superior would apply to make them both liable if it be found that one of them was.

Under the definition of Schwartz v. Johnson, 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323, we do not think the plaintiffs were engaged in such joint enterprise as would make the negligence of the driver imputable to them, and therefore that there was no call for a charge upon the subject except as the principles involved in joint enterprises might affect the liability of one of the partners for the negligence of the other.

It is earnestly insisted, however, and an able brief has been filed,

reviewing many cases upon the subject of contributory negligence, urging that it so appears in this case and of such proximate nature that neither of the plaintiffs was entitled to recover. It is insisted that the rate of speed at which the automobile was being driven at the time of the accident, forty to fifty miles per hour, was negligent. Such a rate was not negligence per se, and to whether or not, under the circumstances of the case, the rate was negligent, was a matter for the determination of the jury. While it had been raining and the road was wet, yet it was wide, new concrete, and the stretch of the road was straight, and there was ample room to have passed the Ford touring car, which kept to its own right side, leaving ample room on the left, with no impediment to passing.

Both declarations alleged that, when the automobile, with defendant McWhirter driving, "had reached a point in said highway three or four miles northeast of Cleveland, Bradley County, Tennessee, . . . the driver of said automobile, without warning and for causes and reasons unknown and over which plaintiff had no control, suddenly, wilfully, negligently and carelessly turned said Chrysler automobile around the left side of a Ford tourning car, which was directly in front of defendant's car and proceeding in the same direction, in a dangerous, reckless and unlawful manner, causing said automobile owned and operated by said defendant Otis McWhirter and in which plaintiff was a passenger, to run off the left side of said highway and down the shoulder thereof for approximately seventy-five yards and into, over and upon a telephone pole located off the edge of said highway and thereby," etc., effecting the injuries set out.

We do not think, therefore, that it was essential that the jury should find that it was the rate of speed that caused the accident, but rather the unskillful or negligent handling of the car in passing that caused it, in allowing it to leave the pavement and get over on the soft dirt and locking it, causing it to slip and wabble, due, doubtless, to the resistance thus offered in causing it to change its course. Or, if the rate of speed should essentially be regarded as contributory to the accident, that it was negligence under the circumstances for the plaintiffs to fail to observe the rate of speed. These were all dependent questions of fact to be determined by the jury, and on both questions were matters upon which there might be differences of opinion.

We are of opinion that there is proof supporting a finding of a liability in both cases, and the only question is as to the amount. From a description of the injuries inflicted and the suffering involved, we think the judgment in the case of Reeves Claxton of $250 was not excessive, and that a similar amount in the case of Hicks against defendants would not have been excessive. But, from all the facts and circumstances of this case, we think the judgment for $500 includes an allowance for a diamond ring which we do not believe was proven as a loss in this accident or that the accident was the proximate cause of such loss, and while we over-

rule all the assignments and affirm the judgment in the case of plaintiff Reeves Claxton, we affirm the judgment in the other case only upon condition that it be abated to the sum of $250.

Otherwise the assignment will be sustained as affecting the amount of the judgment, and the case will be reversed and remanded for a new trial.

The plaintiff in error and their securities will pay all the costs of the cause, except one-fourth thereof accruing in this court, which will be paid by the defendant in error Hicks and his securities.

It was insisted in the seventh assignment that the court should have directed a verdict, because, it is alleged, "it being so apparent that the bringing and prosecuting of these cases was so absolutely lacking in good faith, as to repel their efforts in a Court of Justice," that "it is so apparent from the facts of brother suing brother, brother and mother testifying for brother and son against brother and son, that this is but a conspiracy, collusion and determination to fasten liability upon an innocent and wholly non-participating third party. The fact that one of the defendants was absent at the trial, and refused to make proper defense to the suit brought against him, together with the conduct of the Claxton relatives must convince any Court of Justice that this effort is not only wholly lacking in good faith, collusive, but we submit fraudulent."

While it does not appear in the record, and is not so directly stated, there is a broad implication in this criticism that some one else other than the defendants will be the sufferers from these judgments. If so, doubtless it will be because the defendants have been fortunate in securing indemnity by some arrangement—presumably by contract of insurance against liability. If this be so, the suits cannot be regarded as fraudulently collusive. Neither can a conspiracy to do a lawful act in furtherance of a legal claim be regarded as a defense against liability.

While the prosecution of a suit against a brother may not be regarded as an expression of the highest Christian ethics, it is yet permissible as a legal right in the material government of men which is suffered because of the hardness of our hearts. The eighth assignment has been indirectly overruled in the consideration hereinbefore expressed as well as all others, save the conditional modification above indicated.

Portrum and Thompson, JJ., concur.